348

ACME ENGINEERING CO., Appellant, v. JONES, ADMR, ET, APPELLEE.

Ohio Appeals, Second District, Franklin County.

No. 4033.   Decided November 10, 1947.

Thomas X. Dunigan, Cleveland, for appellant.
Hon. Hugh S. Jenkins, Atty. Genl., Columbus, Hon. John M. Woy, Asst. Atty. Genl., Columbus, for appellees.

**OPINION**

By THE COURT:

The appeal is from a judgment of the Common Pleas Court sustaining the decision of the appellee-administrator on claims for refunds filed by the appellant with said administrator.

The years involved were 1942, 1943 and 1944, during which period the appellant had paid a contribution of 2.7% as fixed by appellee. It is the claim of the appellant that its rate should be .7%, the rate paid by the Buckeye Aluminum Company, predecessor of appellant in business.

Appellant's claim is predicated upon the proposition that the transaction, whereby it was to secure by purchase contract all of the property and assets of the Buckeye Aluminum Company at Wooster, Ohio, consisting of plant, machinery and equipment, dies for making aluminum ware, good will, trade rights, trademarks, trade names, inventions, patents, formulae and recipes, constituted a transfer of the business of the Buckeye Aluminum Company, and that it is a successor in interest to the Buckeye, the contribution rate of which had been .7% under the provisions of §1345-4(c) (1) GC, and that appellant under said provisions of the Code was required to assume and to pay contributions of appellee under the act. Appellant further claims that the rate fixed by the appellee may be corrected, though in apparent conflict with §1345-4(c)-(4)-(F) GC, under authority of §1345-2 (e) GC, because the contribution payments were erroneously collected.

The administrator held against appellant's claim in both instances and asserts, first, that appellant did not acquire its holdings by transfer of the business of the Buckeye Aluminum Company, a former employer, and second, if it did so acquire its business, it is barred by the provisions of §1345-4(c)-(4)-(F) GC:

"Such rate shall become binding upon the employer unless, within sixty days after the mailing of notice thereof to his last known address, or in the absence of mailing of such notice, within sixty days after the delivery of such notice the employer files an application for review and redetermination, setting

forth his reasons therefor. The administrator shall promptly examine the application for review and redetermination, and if a review is granted, the employer shall be promptly notified thereof and shall be granted an opportunity for fair hearing."

It is conceded that the application of the appellant for refund of money which it is claimed was paid erroneously because of an improper rate fixed by appellee, was made more than sixty days succeeding the fixing of the rate.

Counsel for neither party cites any adjudications on the questions involved and, therefore, determination must be made upon the language of the applicable sections of the Code and the facts appearing, which are in the main set up in a stipulation of the parties.

We express our opinion briefly on the issues presented. First, was the appellant a successor in interest of the Buckeye Aluminum Company by transfer of the business of said company to the Acme? Sec. 1345-4(c)-(1) GC, last paragraph. In our judgment, it was.

The contract of sale between the Buckeye and Acme provided that upon final payment of the purchase price it was to receive all the real and personal property and assets of the Buckeye, excepting only monies, deposits or credits in banks, accounts and bills receivable, U. S. and other bonds. The property transferred included the good will, trade rights, trade names, inventions, patents, formulae and recipes and also such rights to the company name as may be conveyed. The appellant was put in possession and control of the plant, equipment and subject matter which was to pass to it by the purchase agreement. Considerable drafting work was done preparatory to manufacturing of some articles and eventually, appellant manufactured under subcontract certain materials employed in the late war. It appears that the appellant, for several months succeeding its taking over, manufactured very little of anything and no aluminum kitchen equipment at any time, which equipment was 95% of the products manufactured by the Buckeye. But it is likewise manifest that, had the Buckeye remained in business, it could not have continued to manufacture its aluminum kitchen equipment because of inability to secure aluminum. Had the Buckeye, instead of the Acme, during the war years involved, manufactured the articles produced by the Acme it could not be successfully claimed that it thereby lost its business identity. It fairly appears that at any time from the date that the Acme took over until it ceased operations, it could have manufactured any and all of the articles commonly produced by

the Buckeye and could have carried on under the title, "Successor to the Buckeye Aluminum Company", and would have been entitled to all the good will and built-up custom of said company, subject only to its ability to secure aluminum.

It further appears from the testimony of Mr. Robert Critchfield, Attorney for the Buckeye, and Mr. M. F. Reuben, stockholder and director of the Acme, and Mr. James Dillon, President of the Acme, that they purchased the assets of the Buckeye with the intent of manufacturing its products and carrying on its business and that it retained its plant equipment, dies, etc., with that purpose in mind.

Although the Acme defaulted in its purchase contract, its status during the period when it operated the plant of the Buckeye must be fixed upon the relationship of the parties as contemplated by their contract, as set up by the stipulation and as appears by the evidence.

Upon the second question, namely, the effect of the failure of appellant to make application for refund of its money at an earlier date, we are of opinion that its right is controlled by §1345-4(c)-(4)-(F) GC, which we have heretofore quoted. It is contemplated under the Unemployment Compensation Act that the administrator shall determine, as of each computation date, the contribution rate of each employer for the next succeeding contribution period. The fixing of this rate is an administrative act and although the administrator is required to conform to the statutory provisions defining the bases of rates, if he fails to observe them and fixes a rate not in accord therewith, the remedy of the employer affected is to make an application within the period prescribed for review and redetermination, as provided by the statute, and if such application is not made the rate so fixed shall become binding upon the employer. The contribution rate is not fixed solely as a matter of law.

Upon the third question, namely, the right of appellant to a refund under §1345-2(e) GC, we hold against the appellant and are of opinion that such section is not to be employed in derogation of the specific provisions of §1345-4(c)-(4)-(F) GC. To so hold would render 1345-4(c)-(4)-(F) GC without effect.

The judgment of the Common Pleas Court will be affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.